UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Civil No. 04-4697 (JRT/FLN)

| | |
|---|---|
| **In re ST. PAUL TRAVELERS SECURITIES LITIGATION II** | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS THE AMENDED AND CONSOLIDATED COMPLAINT** |

Lynda J. Grant, **LABATON SUCHAROW & RUDOFF LLP**, 100 Park Avenue 12th Floor, New York, NY 10017; Renae D. Steiner and Daniel E. Gustafson, **GUSTAFSON GLUEK PLLC**, 608 Second Avenue South, Suite 650, Minneapolis, MN 55402; for plaintiffs.

Marisa A. Hesse, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498; Paul C. Curnin, **SIMPSON THACHER & BARTLETT LLP**, 425 Lexington Avenue, New York, NY 10017-3954; for defendants.

St. Paul Travelers Companies, Inc. and the individual defendants (collectively "defendants") move to dismiss this class action securities fraud case for failure to state a claim. In an amended and consolidated complaint, a putative class of persons who purchased securities of The St. Paul Companies, Inc., and those of its successor, St. Paul Travelers Companies, Inc., asserts securities fraud claims under Section 11 of the Securities Act, Section 10(b) of the Exchange Act and Rule 10(b) promulgated thereunder, as well as control person liability under both statutes. For the following reasons, defendants' motion is denied.

**BACKGROUND**

Lead plaintiff, the Educational Retirement Board of New Mexico, represents a putative class consisting of all purchasers of the securities of The St. Paul Companies, Inc. and those of its successor, St. Paul Travelers Companies, Inc., from the period of January 27, 2000 through and including October 15, 2004. Defendant companies include The St. Paul Companies, Inc. and its successor, St. Paul Travelers Companies, Inc. (collectively "St. Paul"). The individually named defendants include St. Paul Travelers Companies, Inc.'s five primary senior executives (Robert Lipp, Thomas Bradley, Jay Fishman, John Treacy, and Jay Benet) and nine members of the company's Audit Committee during the class period. In addition, the complaint names ten individual defendants, who were signatories to the registration statement disseminated in connection with the merger of St. Paul Companies, Inc. and Travelers, and who are sued solely under Section 11 of the Securities Act.

Lead plaintiff argues that defendants violated securities laws by making affirmative misrepresentations or omissions of material fact, which led to artificial inflation of the stock price. Lead plaintiff asserts that a partial disclosure of the truth occurred on October 14, 2004, when the New York Attorney General filed a complaint. The complaint alleges that an insurance broker named Marsh & McLennan Companies ("Marsh") was steering business to favored insurers to maximize profits under various contingent commission arrangements without regard to the policyholders' best interests. The complaint alleges that "the world's largest insurance companies" participated in

Marsh's steering scheme, "colluding with Marsh to rig bids and submit false quotes to unwitting clients." According to the complaint, when certain policies came up for renewal, competing insurers provided artificially inflated quotes at Marsh's request, which were designed to ensure that the policyholder would renew coverage with the incumbent insurer. The complaint did not name defendants, but the Attorney General's press release noted that other insurance companies are still under investigation. The day after this filing, the analyst A.G. Edwards disseminated a report stating that St. Paul Travelers Companies could expect to be one of those insurance companies under investigation. By the day after the Attorney General's announcement, the stock price of St. Paul Travelers Companies had dropped $2.06 per share, which caused the company to lose market capitalization of over $1 billion.

Since that time, St. Paul Travelers Companies has come under investigation by multiple regulatory agencies. No definitive findings have been released by any agency. In addition, St. Paul Travelers Companies has been specifically identified in at least two proceedings – one involving Marsh executive, Robert Stearns, and one involving worldwide insurance broker, Willis Group – as having participated in bid rigging and the payment of contingent commissions.

## ANALYSIS

**I.     STANDARD OF REVIEW**

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light

most favorable to plaintiff, as the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). A motion to dismiss a complaint should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

## II.    MISREPRESENTATIONS OR MATERIAL OMISSIONS

To survive a motion to dismiss on a claim under either Section 11 of the Securities Act or Section 10(b) of the Exchange Act and Rule 10b-5, plaintiffs must allege facts demonstrating that defendants made a false or misleading statement of material fact, or omitted a material fact that they were duty-bound to disclose. *See* 15 U.S.C. § 77k(a) (Section 11 requirements); 17 C.F.R. § 240.10b-5 (Section 10(b) and Rule 10b-5 requirements). In addition, Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

The first issue is whether defendants made an untrue statement of material fact or omitted a material fact. Lead plaintiff asserts that statements made by defendants about the companies' financial condition were false or misleading because the financial condition was artificially inflated by defendants' participation in illegal bid-rigging activities, and because the financial statements mischaracterized loans as finite reinsurance. Defendants argue that the complaint fails to state with particularity the circumstances constituting fraud.

The complaint alleges specific facts that, if proven true, lead to an inference that defendants participated in the alleged industry-wide bid-rigging scheme, and that defendants' financial statements were therefore false or misleading when made. Lead plaintiff points to the New York Attorney General Complaint, statements by confidential witnesses, the investigation of defendants by numerous regulatory agencies, the identification of St. Paul as a direct participant with Marsh and Willis in the felony complaint against Marsh executive Robert Stearns and the Assurance of Discontinuance filed in the Willis action, and the Minnesota Department of Commerce Report that opined that the company had repeatedly violated its own underwriting policies. One confidential witness explains in detail that bid rigging and the submission of false bids was commonplace at St. Paul. The complaint also alleges that defendants misused "finite" reinsurance to offset its risk of loss with regard to certain surety construction contracts, and that this finite reinsurance was in effect a loan.[1] For support, lead plaintiff primarily relies on information supplied by confidential witnesses. One confidential witness testified that St. Paul's CEO Jay Fishman was told that that loans were being falsely characterized as traditional reinsurance, and he indicated that he did not care. Finally, the complaint alleges that defendants participated in "pay to play" contingent commission payments. This allegation is primarily based on confidential witnesses who assert that defendants were heavily involved in paying Marsh contingent commissions in return for a guarantee of business. In addition, the Willis Group specifically produced emails

---

[1] Finite reinsurance is a type of insurance that spreads an insurer's risk of loss by distributing it among other insurers in exchange for premiums. By transferring risk, the insurer receives coverage on its potential claims at a lower cost than traditional reinsurance.

indicating that St. Paul was one of Willis's biggest contingency commissions players, and that St. Paul used illegal contingent commissions to induce Willis to steer business to it.

The Court concludes that these allegations are sufficiently particularized, and rejects defendants' argument that the statements by the confidential witnesses are conclusory.[2]

The second issue is whether defendants had a duty to disclose the wrongdoing alleged in the complaint. Defendants have a duty to disclose material facts that are necessary to render an affirmative statement "not misleading." *See* 17 C.F.R. § 240.10b-5 (Rule 10b-5); 15 U.S.C. § 77k(a) (Section 11). Lead plaintiff asserts that defendants made continuous affirmative statements about St. Paul's increasing growth, revenues, renewal rates, and net written premiums, without disclosing the true facts causing this growth. According to lead plaintiff, the true cause of this growth is defendants' questionable business dealing and its manipulation of finite reinsurance. Defendants argue that even if lead plaintiff could establish that defendants knew about the supposed questionable practices, the non-disclosure of those practices would not be actionable because disclosure was not necessary to make defendants' general statements about the company's financial performance "not misleading." The Court disagrees.

---

[2] The complaint specifies that each of the confidential witnesses worked for defendants during the class period, and explains the capacity in which they worked and the incidences that they experienced. If their testimony was not based on personal knowledge, the complaint details the person from whom they obtained information, and in most cases the testimony is corroborated by other documents.

Investors need the complete picture to ensure that optimistic statements about a company's financial condition do not mislead investors.  *See, e.g.*, *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668 (S.D.N.Y. 1990) (failure to disclose illegal payments to government officials, while making affirmative statements touting company's competitive advantage, held actionable).  "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972).  Participation in illegal bid-rigging and the other activities alleged would certainly be considered important to investors.  Defendants did not have a duty to accuse themselves of wrongdoing, but they could have disclosed material facts fully indicating how they were accomplishing increases in revenue and market share.  As such, the Court concludes that defendants had a duty to disclose the conduct alleged in the complaint.

## III.   SCIENTER

A securities fraud complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); *see In re Lifecore Biomedical, Inc., Sec. Litig.*, 159 F.R.D. 513, 516 (D. Minn. 1993) ("[A] complaint must adduce specific facts which give rise to a 'strong inference' of fraudulent intent.").  To determine whether the complaint sets forth facts giving rise to a strong inference of scienter, the Eighth Circuit uses criteria developed throughout the circuits that indicate "badges of fraud."  *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 745 (8th Cir. 2002).  Specifically, courts have held that a strong inference

of the required scienter may arise where the complaint sufficiently alleges that the defendants (1) benefitted in a concrete and personal way from the purported fraud, (2) engaged in deliberately illegal behavior, (3) knew facts or had access to information suggesting that their public statements were not accurate, or (4) failed to check information they had a duty to monitor. *See Kushner v. Beverly Enter.*, 317 F.3d 820, 827 (8th Cir. 2003) (summarizing the law of many circuits). Courts look at the allegations collectively to determine whether they give rise to a strong inference of scienter. *Id*. at 826.

The facts alleged in the complaint, when taken as a whole, strongly suggest that the company's senior executives were aware that the financial statements issued during the class period were false or misleading when made. Namely, the complaint alleges that the senior executives were aware that the financial statements neither accurately accounted for nor made sufficient disclosures regarding defendants' alleged participation in bid-rigging or misuse of finite reinsurance.[3] The complaint includes the following specific allegations: the alleged kickback scheme was so pervasive that the company named it the "Top Brass" program, underwriters made false or "B" bids on a regular basis to rig the insurance market, underwriters violated the company's underwriting policies to obtain large group insurance policies through the kickback program, senior executives had access to the Minnesota Department of Commerce Report that opined that the company had repeatedly violated its own underwriting policies, and the alleged

---

[3] The scienter of senior executives can be imputed to the corporate defendants. *See Piper Jaffray Co. Inc. v. Nat'l Union Fire Ins. Co.*, 38 F. Supp. 2d 771, 779-80 (D. Minn. 1999).

misconduct accelerated after Jay Fishman became the CEO of the company. Also, a confidential witness asserts that Fishman was aware that insurance for a project in Boston was not true reinsurance because it did not transfer risk. This allegation, if proven true, may demonstrate that Fishman deliberately engaged in misbehavior. These allegations, plus the fact that senior executives had compensation tied to the company's performance, indicate that several "badges of fraud" are present, and are enough to raise a strong inference of scienter for the senior executives. *See In re Digi Int'l, Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1098 (D. Minn. 1998) ("In the circumstances presented here, in which the individual defendants' performance-based compensation could be enhanced significantly by inflated financial results caused by particularized material omissions of fact and misleading accounting practices, such compensation constitutes evidence of conscious misbehavior."); *Norwood Venture Corp. v. Converse Inc.*, 959 F. Supp. 205, 208-09 (S.D.N.Y. 1997) (finding the plaintiff established an inference of scienter by pleading specific facts that constitute strong circumstantial evidence of conscious misbehavior).

The Court also concludes that the complaint alleges facts that create a strong inference that the members of the Audit Committee failed to check information they had a duty to monitor, and thereby knowingly or recklessly allowed dissemination of false financial reports. *See Kushner*, 317 F.3d at 827. For example, the Audit Committee had access to the Minnesota Department of Commerce Report, which indicated that St. Paul was violating its own underwriting criteria. In addition, the chairman of the Audit

Committee was the former CEO of Marsh, which provides some indication that he may have known of the alleged fraud.

## IV.   LOSS CAUSATION

The parties dispute whether the complaint adequately pleads loss causation under the standard set in *Dura*. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343 (2005). In *Dura*, the United States Supreme Court held that an allegation of an inflated purchase price alone is insufficient to plead loss causation. *Id.* at 339. Rather, a plaintiff must allege a corrective disclosure followed by a drop in the stock price during the time plaintiffs owned the securities. *See In re Retek Sec. Litig.*, 2005 WL 3059566, at *4 (D. Minn. Oct. 21, 2005) (interpreting *Dura*). Here, the disclosure alleged was the New York Attorney General complaint referencing the involvement of a cast of insurance companies in an industry-wide cartel, and the A.G. Edwards analyst report naming St. Paul as one of those companies. The stock thereafter declined. Based on these specific allegations, the Court concludes that the complaint adequately pleads loss causation.

## V.   CLAIMS ALLEGING CONTROL PERSON LIABILITY

Although the Exchange Act and the Securities Act have separate control-person provisions, the same test for control-person liability applies to claims under either Act. *Farley v. Henson*, 11 F.3d 827, 835 (8th Cir. 1993). To state a claim under Section 20(a) of the Exchange Act and Section 15 of the Securities Act, a plaintiff must plead (1) a primary violation of the Acts by the company and (2) the alleged control person exercised

control over the general operations of company and had the power to determine the acts or omissions upon which the primary violation was predicated. *See Farley*, 11 F.3d at 835. As to the first element, the discussion set forth above demonstrates that the complaint adequately pleads a primary violation of Section 10(b) of the Exchange Act and Section 11 of the Securities Act by the company. The Court also finds that the complaint adequately pleads the second element. The complaint contains allegations of control and direction by defendants Fishman, Bradley, and Treacy, and participation in the violation of the Section 11 claim by having signed the Registration Statement. As for the section 10(b) claim, the complaint contains allegations of control and direction by defendants Fishman, Lipp, Bradley, Treacy, and Benet, and participation in the violation of the Section 10(b) claim. Specifically, the complaint alleges that defendants had access to copies of the company's financial reports and other public disclosures alleged in the complaint to be misleading, and had the ability to prevent the issuances of misleading statements in those disclosures.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion to Dismiss the Amended and Consolidated Complaint [Docket No. 33] is **DENIED**.

DATED: September 25, 2006　　　　　　　　　　s/ John R. Tunheim　
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　United States District Judge