## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Civil No. 04-4697 (JRT/FLN)

**In re ST. PAUL TRAVELERS
SECURITIES LITIGATION II**

**MEMORANDUM OPINION
AND ORDER**

Thomas A. Dubbs and Javier Bleichmar, **LABATON SUCHAROW &
RUDOFF LLP**, 100 Park Avenue, New York, New York 10017; Renae D.
Steiner, Daniel E. Gustafson, and Daniel C. Hedlund, **GUSTAFSON
GLUEK PLLC**, 608 Second Avenue South, Suite 650, Minneapolis, MN
55402, for plaintiffs.

Paul C. Curnin, **SIMPSON THACHER & BARTLETT LLP**, 425
Lexington Avenue, New York, NY 10017-3954; Marisa A. Hesse and Peter
W. Carter, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite
1500, Minneapolis, MN 55402-1498, for defendants.

This class action securities fraud case is before the Court on defendants' Motion

for Partial Judgment on the Pleadings.[1]  For the reasons explained below, the Court grants

---

[1] Defendants previously moved to dismiss this case based on, among other things, failure
to plead loss causation, and the Court denied defendants' motion.  Lead plaintiff contends that
defendants' Motion for Partial Judgment on the Pleadings improperly seeks reconsideration in
violation of Local Rule 7.1(g).  Local Rule 7.1(g) provides that "[m]otions to reconsider are
prohibited except by express permission of the Court" and that such permission should only be
given upon a showing of "compelling circumstances."  D. Minn. LR 7.1(g).  Defendants' Motion
to Dismiss, while addressing loss causation generally, did not focus on the specific question of
whether the finite reinsurance claims are severable from the other claims for purposes of
pleading loss causation.  The Court therefore concludes that there is a different question
presented here, and that defendants' Motion for Partial Judgment on the Pleadings is not barred
by Local Rule 7.1(g).

defendants' motion.  The Court also grants lead plaintiff leave to file a second amended complaint.

## BACKGROUND

Additional facts underlying this case are included in the Court's memorandum opinion and order addressing defendants' Motion to Dismiss.  *See In re St. Paul Travelers Sec. Litig. II*, No. 04-4697, 2006 WL 2735221 (D. Minn. Sept. 25, 2006).  The Court summarizes below those facts most relevant to the current motion.

Lead plaintiff, the Educational Retirement Board of New Mexico, represents a putative class consisting of all purchasers of the securities of St. Paul Companies, Inc. and those of its successor, St. Paul Travelers Companies, Inc., from the period of January 27, 2000 through and including October 15, 2004.  Lead plaintiff alleges that St. Paul Travelers Companies, Inc. ("Travelers") and the individual defendants (collectively "defendants") violated securities laws by making affirmative misrepresentations or omissions of material fact.

According to the Amended Complaint, defendants made affirmative statements about Travelers's increasing growth, revenues, renewal rates, and net written premiums without disclosing the true facts causing this growth.  Lead plaintiff alleges that defendants did not tell investors that they participated in certain illegal activities, including "pay to play" contingent commission payments to insurance brokers, bid-

rigging, and misuse of "finite" reinsurance products.[2]  Lead plaintiff asserts that a partial disclosure of the truth occurred on October 14, 2004, the day before the last day of the class period, when the New York State Attorney General ("NYAG") Elliot Spitzer announced that his Office had filed a civil complaint against March & McLennan Companies, Inc. alleging fraud and antitrust violations and implicating major insurance companies in an industry-wide cartel.  On October 15, 2004, the last day of the class period, an A.G. Edwards & Sons, Inc. analyst report noted that Travelers could expect to be involved in the investigation and subject to subpoena.   Over the period of October 13-14, 2004, Travelers's stock price dropped $2.06 per share, which caused the company to lose market capitalization of over $1 billion.  About one month later on November 16, 2004, Travelers disclosed that it received a second subpoena from the NYAG in relation to its use and sale of finite reinsurance.  The Amended Complaint does not allege that Travelers's share price declined after the disclosure on November 16 relating to the finite reinsurance accounting improprieties.

On September 26, 2005, defendants moved to dismiss the Amended Complaint based on, among other things, failure to plead loss causation.   This Court denied defendants' motion, reasoning that public disclosures implicating Travelers's involvement in the alleged cartel followed by a decline in Travelers's stock price satisfied loss causation pleading requirements.  On November 3, 2006, defendants filed a Motion

---

[2] Finite reinsurance is a type of insurance that spreads an insurer's risk of loss by distributing it among other insurers in exchange for premiums.  By transferring risk, the insurer receives coverage on its potential claims at a lower cost than traditional reinsurance.

for Partial Judgment on the Pleadings.  Defendants now distinguish the finite reinsurance

claims from the cartel claims and seek dismissal of the finite reinsurance claims for

failure to adequately plead loss causation.

## ANALYSIS

### I.  STANDARD OF REVIEW

Judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate where the

moving party has clearly established that there are no material issues of fact and the

moving party is entitled to judgment as a matter of law.  *Pothoff v. Morin*, 245 F.3d 710,

715 (8th Cir. 2001).  The Court must accept as true all facts as pleaded by the non-moving

party and grant all reasonable inferences in that party's favor.  *Id.*  If the parties present

and the Court does not exclude matters outside the pleadings, the motion will be treated

as one for summary judgment under Fed. R. Civ. P. 56, and all parties must have a

reasonable opportunity to present all material pertinent to such a motion.  Fed. R. Civ. P.

12(c).

### II.  LOSS CAUSATION

Defendants move for partial judgment on the pleadings, arguing that lead plaintiff

inadequately pled loss causation with respect to the finite reinsurance allegations under

the standard set by the United States Supreme Court in *Dura*.  *See Dura Pharm., Inc. v.*

*Broudo*, 544 U.S. 336, 342-46 (2005).  Lead plaintiff argues that it has sufficiently pled

loss causation because it need only provide a short and plain statement alleging facts to

provide defendants with "some indication of the loss and the causal connection that the

plaintiff has in mind." *Dura*, 544 U.S. at 347.  In particular, lead plaintiff argues that: (1) *Dura* does not require a "corrective disclosure," (2) a decline in the stock price does not necessarily have to follow a truthful disclosure or leakage, and (3) *Dura* does not require a separate truthful disclosure followed by a drop in the stock price for each theory of fraud.

Lead plaintiff's first two lines of argument are unsustainable.  Under *Dura*, "a plaintiff must allege a corrective disclosure followed by a drop in the stock price during the time plaintiffs owned the securities." *In re St. Paul Travelers Sec. Litig. II*, 2006 WL 2735221, at *4 (citing *In re Retek Sec. Litig.*, No. 02-4209, 2005 WL 3059566, at *4 (D. Minn. Oct. 21, 2005) (interpreting *Dura*)).

Thus, the key question here is whether *Dura* and its progeny require a separate truthful disclosure followed by a drop in the stock price for *each* theory of fraud. Defendants frame the claims at issue as premised on two distinct factual bases: (1) Traveler's alleged involvement in an industry-wide cartel employing contingent commissions and bid-rigging; and (2) Traveler's allegedly improper accounting treatment for certain finite reinsurance contracts.  Defendants argue that lead plaintiff inadequately pled loss causation because only one factual basis – the alleged insurance industry cartel – was specifically discussed in the disclosures made on October 14 and October 15. The truthful disclosure on November 16 relating to the finite reinsurance accounting improprieties was not followed by an alleged drop in Travelers's stock price.  Finally, defendants point out that the November 16 disclosure occurred one month *after* the only stock price drop alleged in the complaint and one month *after* the end of the class period.

A causal connection cannot be made between a stock price decline that occurred one month before the truth became known to the market.  Lead plaintiff takes the position that all of the material omissions were related to Travelers's unsustainable and illegal business practices and argues, like the *Retek* plaintiffs, that they were part of a broader scheme that began to be disclosed with the NYAG announcement and A.G. Edwards report.  *See In re Retek Sec. Litig.*, 2005 WL 3059566, at *3.

Determining whether a complaint alleges factually separate theories is a case-specific inquiry.  *See id.* at *3-4.  In general, defendants analogize the facts of this case to *Dura* and attempt to distinguish *Retek*.  Lead plaintiff takes the opposite position.  The Court therefore compares the facts alleged in this case with the facts alleged in *Dura* and *Retek*.

## A.      The *Dura* Case

According to the amended complaint in *Dura*, defendants made false statements concerning Dura's drug profits and also concerning future Food and Drug Administration ("FDA") approval of a new asthmatic spray device.  *Dura*, 544 U.S. at 339.  In respect to drug profits, Dura falsely claimed that it expected that its drug sales would prove profitable.  *Id*.  In respect to the asthmatic spray device, Dura falsely claimed that it expected the FDA would soon grant its approval.  *Id*.  On the last day of the purchase period, Dura announced that its earnings would be lower than expected, principally due to slow drug sales.  *Id*.  The next day Dura's shares lost almost half their value.  *Id*.  About eight months later, Dura announced that the FDA would not approve Dura's new

asthmatic spray device. *Id*. The next day Dura's share price temporarily fell but almost fully recovered within one week. *Id*.

Only the claim concerning the spray device was at issue before the Supreme Court. The Supreme Court did not view either of the truthful disclosures followed by declines in Dura's stock price as sufficient to plead loss causation. *Id.* at 346. The first disclosure, which announced lower than expected earnings, did not disclose any truthful information about Dura's spray device. *Id.* at 339. As to the second disclosure, the Supreme Court held that an allegation of an inflated purchase price alone is insufficient to plead loss causation and explained that the complaint failed "to claim that Dura's share price fell significantly after the truth [about the spray device] became known." *Id*. at 347.

**B.     The *Retek* Case**

*Retek* involved claims resting on misrepresentations concerning four factual matters: (1) defendants prematurely recognized revenue from a contract with A&P, a grocery chain; (2) defendants claimed that AOL was a new customer even when they knew Retek had lost AOL as a customer; (3) defendants made positive statements about Retek's alliance with IBM even though they knew the alliance had dissolved; and (4) defendants valued Retek's Multi Asia, Inc. stock at $4 million and placed that stock in its deferred revenue category, but failed to report the difficulties with its joint venture with Multi Asia. *In re Retek Sec. Litig*., 2005 WL 30595666, at *1. According to the complaint, on the last day of the class period, the defendants issued a press release disclosing a decline in revenue generally and attributing that decline, in part, to a

restatement of revenue with respect to the Multi Asia account. *Id*. at *2. This announcement led to a stock price decline of nearly two-thirds of the company's stock price. *Id*.

Defendants moved for partial judgment on the pleadings for failure to plead loss causation with respect to the three claims not mentioned in the press release. *Id*. at *3. Defendants argued that the fall in stock value could not be causally connected to the alleged fraud underlying those three claims because the truth had not been disclosed to the market. *Id*. Plaintiffs argued that the disclosure made in the press release relating to the Multi Asia was "inextricably linked" to Retek's misrepresentations concerning the A&P account, the alliance with IBM, and the lost AOL account. *Id*. Plaintiffs contended that all of the misrepresentations were part of a broader scheme that "began to be disclosed" with the press release. *Id*.

The Court held that the plaintiffs had alleged enough to survive *Dura*, distinguishing the facts in *Retek* from the facts in *Dura*. *Id*. at *4. The Court characterized *Dura* as involving "completely separate" products, reasoning that the corrective disclosure concerned defendants' lower than expected earnings due to slow drug sales while the claim that was dismissed involved an asthmatic spray device. *Id*. There was "no apparent logical connection" between the stock drop and the defendants' false statements concerning FDA approval of the device. *Id*. *Retek*, on the other hand, involved misrepresentations concerning the same products and sales that were the subject of the press release. *Id*.

Here, lead plaintiff makes no attempt to argue that contingent commissions and bid rigging are factually intertwined with finite reinsurance, and the Court concludes that the only similarity is that all are illegal business practices.  Indeed, lead plaintiff argues that the information concealed by defendants is their "unsustainable and illegal business practices – not the specific business practices themselves."  (Pl.'s Resp. at 3.)  In essence, lead plaintiff's position is that a corrective disclosure about any questionable conduct that impacts a company's financial statements is a sufficient disclosure about any other questionable conduct.  The Court cannot adopt this position because it would create a boundless rule, rendering meaningless the loss causation requirement under Private Securities Litigation Reform Act.  The Court concludes that the complaint is based on two factually distinct theories, and lead plaintiff must therefore provide a theory of loss causation for each.

The only theory of loss causation alleged in the complaint is based on the stock price drop following the October 14, 2004 NYAG announcement and the October 15, 2004 analyst report, both of which reference an insurance industry-wide cartel but make no mention of finite reinsurance.  There is "no apparent logical connection" between the stock drop that followed these disclosures and defendants' misrepresentations or omissions concerning finite reinsurance.  *See In re Retek Sec. Litig.*, 2005 WL 3059566, at *4.  And it would be contrary to *Dura* and *Retek* to hold that there is some causal connection between the November 16 disclosure regarding finite reinsurance and the prior loss that occurred on October 14.  The Court therefore concludes that lead plaintiff

has failed to adequately plead loss causation as to the finite reinsurance claims, and grants defendants' motion for partial judgment on the pleadings.

## III.   LEAVE TO AMEND

Lead plaintiff requests leave to file a second amended complaint to allege that the November 16 disclosure caused a drop in Traveler's stock price on November 17, 2004, and to extend the class period to November 16, 2004.  Pursuant to Federal Rule of Civil Procedure 15, "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The allegations against defendants are egregious and counsel against this Court unduly narrowing the scope of plaintiffs' claims and potential recovery at this early stage of the litigation.  As such, the Court concludes that lead plaintiff may file a second amended complaint to allege that the November 16 disclosure caused a drop in Traveler's stock price on November 17, 2004.

In regard to the extension of the class period, defendants argue that the claims of those who purchased Travelers stock between October 14 and November 17 (the "new purchasers") are untimely under the statute of limitations set forth in 28 U.S.C. § 1658(b). Section 1658(b) provides that any securities fraud action must be brought not later than the earlier of "2 years after discovery of facts constituting the violation" or "5 years after such violation."  28 U.S.C. § 1658(b).  Defendants indicate that the claims of the new purchasers were first proposed in lead plaintiff's memorandum of law filed on December 22, 2006, more than 2 years after November 16, 2004, the date on which Travelers revealed that it had received a subpoena regarding finite insurance from the

NYAG.  Defendants argue, therefore, that the claims of the new purchasers are barred unless the claims relate back to the Amended Complaint filed on July 11, 2005.

The Court need not address whether the claims of the new purchasers violate the statute of limitations set forth in 28 U.S.C. § 1658(b) because it concludes that even if the claims of the new purchasers are untimely, they are not barred because they relate back to the Amended Complaint.  Rule 15(c) of Federal Rule of Civil Procedure governs relation back of amendments.   Although Rule 15(c) does not mention amendments changing plaintiffs, the advisory committee notes to the 1966 amendments of Rule 15(c) does:

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

Fed. R. Civ. P. 15(c) advisory committee's note on the 1966 amendment; *see also Plubell v. Merck & Co.*, 434 F.3d 1070, 1072 (8th Cir. 2006) (applying Rule 15(c)(3) to an amendment changing plaintiffs).  Under Rule 15(c)(3), "an amendment relates back if the defendant knew or should have known that it would be called on to defend against claims asserted by the newly-added plaintiff, unless the defendant would be unfairly prejudiced in maintaining a defense against the newly-added plaintiff."  *Id.* (quoting *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1132 (11th Cir. 2004)) (internal quotations omitted).

Here, the claims of the new purchasers and the original putative class members consist of identical causes of action based on the same set of operative facts.  The Amended Complaint already includes the November 16, 2004 disclosure, and the

proposed amendments merely detail the decline in stock price that occurred after the November 16, 2004 disclosure. The primary difference with the Amended Complaint is temporal rather than substantive because lead plaintiff simply seeks to expand the class period to November 16, 2004. Defendants were on clear notice from the Amended Complaint that the company's use of finite reinsurance was in question, and the Court cannot conclude that defendants would be unfairly prejudiced in maintaining a defense against the newly-added plaintiffs. *See id.* Therefore, the Court concludes that the claims of the new purchasers relate back to the Amended Complaint filed on July 11, 2005 and are well within the two-year statute of limitations.

In sum, the Court concludes that lead plaintiff may file a second amended complaint that includes the additional allegations provided in its memorandum of law filed on December 22, 2006, and may also extend the class period to November 16, 2004.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion for Partial Judgment on the Pleadings [Docket No. 71] is **GRANTED**.

**IT IS FURTHER HEREBY ORDERED** that lead plaintiff may file an amended complaint within 30 days of this Order.

DATED:   June 1, 2007                    _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                            United States District Judge